[No. 6168.]

## MAHLER v. BEISHLINE.

1.  **Evidence—Admissibility**—In an action grounded upon allegations of fraud, the evidence may legitimately take a very wide range; but where defendant was the head of a religious community, and plaintiff claimed that she had been deluded by false pretenses of the defendant to a supernatural power to treat certain maladies by which she was afflicted, and induced to surrender her property and put it in the possession of the defendant, by reason of her faith in these representations, and that all these representations and pretenses were false, the testimony of other members of the sect as to their experience, and attempts to obtain their property, was held incompetent.—(606)

2.  **Evidence—Incompetent—Subsequently Excluded** — Error in admitting incompetent evidence held to be cured by an instruction to the jury to disregard it.—(607)

3.  **Deceit—False Representations**—Representations that the party making them is possessed of a supernatural power, either residing in him, or subject and responsive to his call upon the Almighty, to heal disease, is a representation of a present fact, and if false, and made with intent to defraud, is actionable.—(608)

*Appeal from El Paso County Court* — Hon. ROBERT KERR, Judge.

Mr. F. J. BAKER, for appellant.

Mr. P. M. KISTLER, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an action for the recovery of possession of personal property, which plaintiff says was obtained from her through the fraudulent conduct of an unincorporated body of men having a corps of officers

of which defendant is the local representative. The case originated before a justice of the peace and, therefore, there are no written pleadings. Upon the trial of the appeal in the county court plaintiff had judgment and defendant appeals. This court has not jurisdiction of the appeal, and it must, therefore, be dismissed, but, as required by our statute, the case will be redocketed and disposed of as pending on a writ of error.

The legal questions involved arise out of an unusual state of facts. In summarizing them it is not to be inferred that there is no conflict in the evidence. There is evidence, however, tending to establish the facts which we proceed to narrate: An alleged religious sect or order, "The Williamites," so-called from Henry T. Williams, the name of its founder, has, in different places in this and other states, homes where its adherents live as members of one family and carry on various kinds of business, in the name, and under the absolute control and direction, of its founder, who is still living. One of its doctrines or beliefs is that all diseases of mankind can be cured without medicine, by prayer or intercession alone.

Into one of these homes, near Colorado Springs in this state, the plaintiff, a woman forty-five years old and afflicted with a grievous malady, was admitted, apparently at her own request, but which was made, as she says, after previous frequent inducing interviews between her and the local manager. As a result of repeated conversations she became a believer in the sect, and especially in divine healing, and had implicit confidence in its officers. It seems that these people teach their followers that an essential condition precedent to a cure is the consecration of their persons and all their worldly possessions to the Lord, and submission of themselves absolutely to the orders of the officers. When plaintiff was admitted

to this home she consented that some of her property, that she then had in her possession, and which is in controversy here, be taken along with her, and afterwards when she was not cured of her malady, and was told by the manager of the home that it was because her consecration had not been complete and perfect, she gave up all of her remaining property, notwithstanding which the promised cure was not effected. After she had been in the home for more than two years, working in co-operation with other members, in carrying on the business there conducted, she became dissatisfied, not only because she was not cured, but because her property, as she claims, was not consecrated to the Lord, but was diverted from that purpose, for which it was designed, and held under claim of private ownership by the head of the order for his own sole use and benefit. She left the home and after demanding possession of her property without success, brought this action to recover it. The defendant in whose possession it was, as local manager of one of the homes, is treated by the parties as the representative of the sect, and as authorized to defend in its behalf.

Defendant has made two principal assignments of error: one, that the court wrongfully refused his motion for a nonsuit at the close of plaintiff's case, and likewise erred in not directing a verdict for him, after his own evidence was in. The specific rulings objected to may be grouped under three principal heads: first, rulings upon evidence; second, refusal of instructions asked by defendant, and giving of instructions by the court of its own motion; third, to the legal sufficiency of the evidence to support the judgment.

As we gather from the record, the plaintiff's theory is that by the knowingly false and fraudulent conduct and statements of the officers of the church,

concerning their existing power to cure her of her disease, which she then believed to be true, and on which she relied, and because she thought she was consecrating her property to the Lord, she consented that it should be taken to the home into which she was admitted, to which absolute title was afterwards asserted by the head of the sect; and that this entire scheme of so-called consecration was but a subterfuge or artifice practiced upon her, a devout believer, to enable the head of the order to get title in his own name, and possession of all her property. The defendant's position is that the plaintiff voluntarily made a complete, executed gift of the property to the head of the order, which was required as a condition of membership, and as some compensation for the comfort and privileges of the common home, and that no fraud was practiced by them upon her in procuring the gift.

In this character of action, where it is grounded upon such acts of fraud, the evidence may legitimately take a very wide range. We are impressed, however, after a painstaking reading of the record, that some evidence in behalf of plaintiff was admitted that should have been excluded. At the same time, we are firmly convinced that its reception was not prejudicial to defendant, but, on the contrary, there is an affirmative showing that no prejudice could have resulted. Many questions of plaintiff's counsel that were objected to and to which answers were given, were asked and answers given elsewhere in the record, without any objection at all. Still other evidence, which we think ought not to have been admitted, was produced by plaintiff without any effort whatever upon the part of defendant to keep it out. The court should not have permitted so wide a latitude to plaintiff in introducing evidence as to the religious beliefs and doctrines and practices of the

alleged religious order; particularly the testimony of several other of its members, from this and other states, touching their experiences as members of these homes, and with respect to attempts, fraudulent as it was said, to obtain their property. But the court, we think, under its caution to the jury during the trial and its subsequent exclusion of the most objectionable part of this testimony, and its final instruction to the jury, not to consider the religious doctrines of the order in determining the conflicting property rights, cured the error. Our conclusion upon this branch of the case is fortified by uncontradicted testimony of plaintiff and of admissions by defendant, and particularly of his witness Morrow, who manages the business and property, in the absence of the supreme head. This evidence, if believed by the jury, sustains their findings and upholds the judgment which the court entered upon them.

The instructions tendered by defendant and refused by the court were, in so far as pertinent, embodied in those given by the court of its own motion. Only three of the court's instructions are criticised, and our examination of them satisfies us that they unquestionably state correct legal propositions on the law of the case, and are based upon competent evidence. The same observation may also be indulged on this branch of the case as was made in discussing the rulings on evidence. It is doubtful if defendant's objections were properly taken and exceptions preserved to these instructions, so as to enable him to be heard upon them; but if our practice in these respects was followed, no error in the instructions has been pointed out.

The most important assignment is that relating to the sufficiency of the evidence. Defendant says that the fraud relied upon by plaintiff was not as to

any past or present acts or conduct, but only with respect to future promises, and that such fraud is not a ground for equitable relief. The court so charged the jury and told them that the plaintiff must, among other things, show that the fraud upon which she counted was with reference to past or present matters. The defendant is mistaken in supposing that plaintiff did not rely upon past or present acts of fraud. In effect, she claimed in her testimony that the officers of the sect, whom defendant represents, practiced upon her when she was greatly distressed in mind as a result of her grievous disease, gross fraud with respect to their existing power or ability, residing either in themselves, or subject and responsive to their call from the Almighty, to cure her of the disease, and by such fraud they induced her to put her property into their possession with the understanding, on her part, that it was being consecrated to the Lord; whereas, as she claims, their entire efforts and conduct was nothing more than a fraudulent scheme practiced upon her to enable the head of the order to get title to her property, for his sole use and benefit, instead of devoting it to the use to which she supposed she was consecrating it. We are not prepared to say that if there was testimony tending to support these charges, as there was, she was not entitled to recover, even though there was conflicting evidence. We find no prejudicial error in the court's instructions, or in its rulings on evidence, as we have already stated; and if the jury believed, as evidently they did, the testimony of plaintiff and her witnesses, she was entitled to recover her property, because, in that event, she parted with its possession without a good, or valuable, consideration, but as a result of flagrant fraud practiced upon her. The judgment is, therefore, affirmed.                    *Affirmed.*

CHIEF JUSTICE STEELE and MR. JUSTICE MUSSER concur.